## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

MARK FITZHENRY, individually
and on behalf of a class of all persons and
entities similarly situated,

      Plaintiffs,

vs.                              Case No.   2:19-cv-2993-RMG

INDEPENDENT HOME PRODUCTS, LLC

      Defendant.

### CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Mark Fitzhenry brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq.*

2.      Mr. Fitzhenry alleges that Defendant Independent Home Communication, Inc. sent him an automated telemarketing call promoting Independent Home's products without prior express written consent, and did so using a non-working or "spoofed" Caller ID number.

3.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendant' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.      Plaintiff Mark Fitzhenry resides in Charleston County, South Carolina.

6.      Defendant Independent Home Products, LLC is a Delaware corporation with its corporate headquarters at 59 Hempstead Garden Dr., West Hempstead, NY 11552. It does business throughout the United States, including in this District and makes telemarketing calls into this District, as it did with the Plaintiff.

### Jurisdiction & Venue

7.      The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C.  § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendant.

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff Fitzhenry—occurred in this District.

### Statutory Background

THE TCPA

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10.     The TCPA makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

11.     These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

12.     Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

<u>THE SCTPPA</u>

13.     On May 18, 2018 the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

14.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number using a "spoofed", or non-working Caller ID number. S.C. Code. § 37-21-50(B).

15.     The SCTPPA also prohibits, *inter alia,* a party from initiating, or causing to

initiate, a telephone solicitation to a South Carolina telephone number unless:

> At the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made and promptly disclose to the consumer the following information:
>
>> (1) the telephone number and address at which the telephone solicitor may be contacted; and
>> (4) the option to be added to the telephone solicitor's in-house "do not call" list if the consumer requests being added to such list, confirmation that the consumer's name and telephone number will be placed on such list.

*See* S.C. Code § 37-21-40.

16.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

THE GROWING PROBLEM OF AUTOMATED TELEMARKETING

17.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

18.     By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

19.     Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

20.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

21.    According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited October 17, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

22.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

### Factual Allegations

23.    Mr. Fitzhenry's number, 864-763-XXXX, is assigned to a cellular telephone service.

24.    On September 25, 2019, Independent Home called Mr. Fitzhenry on his number 864-763-XXXX.

25.    This call was made with an ATDS, as that term is defined by the TCPA.

26.    When the Plaintiff received the call there was no one on the other line, indicating that the call was dialed automatically by a computer from a stored file or list.

27.    The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

28.    On information and belief, the dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

29.    Loading a list of telephone numbers into the dialing system and pressing a single command does this.

30.     On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

31.     The dialing system can do this by inputting a straightforward computer command.

32.     Following that command, the dialing system will sequentially dial numbers.

33.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

34.     This would be done without any human intervention or further effort.

35.     Furthermore, the number that displayed on the Plaintiff's phone is (785) 432-2605, a non-working number.

36.     The use of a "spoofed" or non-working Caller ID number is further indication that an ATDS was used, as it typically takes an automated calling program to choose the Caller ID used to make the calls.

37.     The individual was not identified at the outset of the call by providing his number and address and did not state at the outset of the call that Mr. Fitzhenry had the option to be added to the telephone solicitor's in-house "do not call" list.

38.     To learn the identity of the company calling him, Mr. Fitzhenry engaged the telemarketer and confirmed their information.

39.     Mr. Fitzhenry did not give Independent Home his consent to call his cellular phone using an auto-dialer.

40.     Mr. Fitzhenry and others who received these calls were temporarily deprived of legitimate use of their phones and their privacy was invaded.

## **Class Action Allegations**

41.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

42.     The proposed classes are tentatively defined as:

ATDS CLASS:

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendant, or someone on its behalf, placed a call to his or her cellular telephone line, using the same or similar equipment used to call the Plaintiff, attempting to sell Independent Home goods or services and where Defendant's records do not indicate written consent from the recipient or where the purported consent was obtained in the same or similar fashion.

SCTPPA CLASS:

> All persons with a South Carolina area code, and to whom, at any time from May 18, 2018, Defendant, or someone on its behalf, placed at least one call by or at the direction of Defendant called to promote the sale of Independent Home products or services with (a) a "spoofed" or non-working Caller ID number; and/or (b) the number and address of the caller was not provided at the outset of the call; and/or (c) the caller did not disclose that the call recipient had the option to be added to the telephone solicitor's in-house "do not call" list.
> .

43.     The Plaintiff is a member of both classes.

44.     Excluded from the classes are the Defendant, any entities in which the Defendant

have a controlling interest, the Defendant' agents and employees, any Judge to whom this action

is assigned, and any member of the Judge's staff and immediate family.

45.     Class members are identifiable through phone records and phone number

databases that will be obtained through discovery.

46.     Based on the automated nature of telemarketing campaigns, there are likely

thousands of class members. Individual joinder of these persons is impracticable.

47.     There are questions of law and fact common to Plaintiffs and the proposed class, including:

a.    Whether the Defendant used an ATDS to send telemarketing calls;

b.    Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

c.    Whether the Defendant's TCPA violations were negligent, willful, or knowing;

d.    Whether the Defendant's SCTPPA violations were willful; and

e.    Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

48.     Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

49.     Plaintiff is an adequate representative of the classes because his interests do not conflict with the classes' interest, he will fairly and adequately protect the classes' interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

50.     The Defendant's actions are applicable to the classes and to Plaintiff.

51.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendant and others.

52.    The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

53.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting autodialer calls to cell phones

54.    The Defendant violated the TCPA by (a) initiating a telemarketing call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service without prior express written consent, or (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

55.    The Defendant's violations were willful or knowing.

56.    The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendant from using an automatic telephone dialing system, absent an emergency circumstance or prior express written consent.

### Count Two:
### Violation of the SCTPPA

57.    The Defendant violated the SCTPPA by (a) initiating a telemarketing call to the Plaintiff, a South Carolina resident (a) using a "spoofed" or non-working Caller ID number; and/or (b) the number and address of the caller was not provided at the outset of the call; and/or (c) the caller did not disclose that the call recipient had the option to be added to the telephone solicitor's in-house "do not call" list.

.

58.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. *See* § 37-21-80.

### Relief Sought

Plaintiff requests the following relief:

A.     That the Court certify the proposed classes;

B.     That the Court appoint Plaintiff as class representative;

E.     That the Court appoint the undersigned counsel as counsel for the class;

F.     That the Court enter a judgment permanently enjoining the Defendant from using an automatic telephone dialing system, absent an emergency circumstance.

G.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

H.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA;

I.     That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

J.     That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DAVE MAXFIELD, ATTORNEY, LLC

By:     _s/ Dave Maxfield_____
David A. Maxfield, Fed. ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com


Anthony Paronich, Esq.
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com
*(to be admitted Pro Hac Vice)*


*Attorneys for Plaintiff*


DATED: October 22, 2019