UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-02993-SAL |
| Plaintiff, | |
| Vs. | |
| INDEPENDENT HOME PRODUCTS, LLC, | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORNADUM IN SUPPORT**

Plaintiff Mark Fitzhenry, on behalf of himself and a proposed class of similarly situated

persons, with the consent of Defendant Independent Home Products, LLC, hereby moves the

Court, for entry of an order preliminarily approving the class action settlement set forth in the

Parties' Settlement Agreement ("Settlement" or "Agreement"), certifying a class for settlement

purposes, and providing for issuance of Notice to the Settlement Class.

## I.    INTRODUCTION

Plaintiff Mark Fitzhenry ("Plaintiff") and Defendant Independent Home Products, LLC

("IHP") have reached a Class Action Settlement Agreement and Release in this proposed class

action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and

the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 (the

"Agreement" or "Settlement"). The Agreement,[1] which is subject to this Court's approval,

requires IHP to make available $5,166,666.67 and the actual costs of settlement notice and

---

[1] The Agreement is attached hereto as Exhibit 1.  Capitalized terms used herein, unless otherwise
defined, have the same definitions as those terms in the Agreement.

administration for the benefit of Plaintiff and proposed class members. All class members who submit a simple, largely pre-populated, claim form will receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call, which far exceeds the typical value of rewards in such settlements. The settlement fund also will be used to pay the service award, if any, approved by the Court and the attorneys' fees and costs awarded to Class Counsel by the Court, if any.

The settlement also provides meaningful injunctive relief.  Pursuant to the settlement, IHP agrees to submit to a permanent injunction designed to prevent against the potential violation of the TCPA or SCTPPA. First, IHP will not make unsolicited telemarketing calls to telephone numbers that IHP determines to be cellular telephone numbers using Spitfire[2]. Second, so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers; and (3) IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers.

The parties reached the Settlement after briefing IHP's dispositive motion to dismiss or to strike class allegations and IHP's motion to stay. The parties engaged in discovery, which included production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue, IHP financial documents, and the deposition of IHP's corporate representative. See Declaration of Anthony Paronich, attached as Exhibit 2, at ¶ 8. The parties engaged in a full-day mediation session with the able assistance of Hon. James Holderman (Ret.) of JAMS. *Id*. By the time the parties finalized an agreement, they were well aware of the

---

[2] Spitfire is a third-party dialing service software that also offers the ability to determine if numbers that are going to be called are cellular telephone numbers.

strengths and weaknesses of their respective positions and of the risks associated with pursuing

the case through trial, especially in light of the financial condition of IHP, particularly as a result

of the Covid-19 pandemic and supported by the financial documents provided by IHP to

Plaintiff. *Id*.

If approved, the Settlement will bring an end to what has otherwise been, and likely

would continue to be, hard-fought litigation centered on unsettled legal questions. The proposed

settlement is fair, reasonable, adequate, and the per-claimant awards are well in line with TCPA

settlements approved across the country. Accordingly, Plaintiff respectfully requests that the

Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed

settlement class; (3) appoint as class counsel the law firms Paronich Law, P.C. and Kaufman

P.A.; (4) appoint Plaintiff as class representative; (5) approve the proposed notice plan; (6)

appoint Epiq Systems ("Epiq") to serve as settlement administrator; and (7) schedule the final

fairness hearing and related dates.

## II.     PROCEDURAL BACKGROUND

On October 22, 2019, Plaintiff initiated this litigation against IHP in the United States

District Court for the District of South Carolina, alleging violations of the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, and the South Carolina Telephone Privacy Protection

Act ("SCTPPA"), S.C. Code § 37-21-10, and seeking, *inter alia,* monetary damages. [DE #1].

On December 23, 2019, IHP filed a motion to dismiss and to strike class allegations (D.E.

#8), and Plaintiff responded on December 27, 2019 (D.E. #10). IHP replied on January 3, 2020.

[D.E. #11]. IHP then filed a motion to stay the action pending FCC guidance on the definition of

an automatic telephone dialing system under the TCPA on February 3, 2020 (D.E. #13), to which

Plaintiff responded on February 10, 2020 (D.E. #14). IHP replied on February 18, 2020. [D.E.

#15]. The parties also engaged in discovery, which included production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue, IHP financial documents, and the deposition of IHP's corporate representative. Paronich Decl. at ¶ 8.

IHP at all times has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it violated the TCPA or SCTPPA or committed any other wrongful act or violation of law.

On August 13, 2020, the parties engaged in a full-day mediation session with the assistance of Hon. James Holderman (Ret.) of JAMS. In support of the settlement, Judge Holderman has provided a declaration, which states:

> Until my retirement on June 1, 2015, I served as a United States District Court Judge of the Northern District of Illinois for 30 years and was Chief Judge of that District from July 1, 2006 through June 30, 2013.

> On June 2, 2015, I began providing private dispute resolution services with JAMS, including mediating lawsuits.

> The mediated settlement negotiations in this case that resulted in the proposed settlement between the Plaintiff Mark Fitzhenry and Defendant Independent Home Productions, LLC began with pre-mediation discussions, continued with the submission of mediation statements by each side, and concluded with a day-long mediation session via JAMS Zoom videoconference on August 13, 2020.

> During the August 13, 2020 mediation session, Counsel for the Plaintiff and Counsel for the Defendant discussed with me, while each side was in a separate room, their relative views of the law, the facts, and the risks involved in continuing to litigate. I mediated their discussions using the shuttle diplomacy method.

> During the August 13, 2020 mediation session, I personally witnessed that each side's Counsel conducted their mediated settlement negotiations at all times in an adversarial, arm's-length, good faith and non-collusive manner.

> At the conclusion of the mediated negotiations, after discussing each side's demands and offers with the other side, the negotiated settlement of the case was documented in the Settlement Term Sheet signed after 7:00 PM EST by authorized representatives of each side and their Counsel.

See Declaration of Hon. James Holderman (Ret.), attached as Exhibit 3 at ¶¶2-7.

Plaintiff believes that the claims asserted in the Action have merit. Paronich Decl. at ¶ 10. Nonetheless, Plaintiff and Class Counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action through class certification, trial, and any subsequent appeals. *Id*. Plaintiff and Class Counsel also have taken into account the uncertainty, difficulties, and delays inherent in litigation, especially in complex actions, and the financial condition of IHP, particularly as a result of the Covid-19 pandemic and supported by the financial documents provided by IHP to Plaintiff. *Id*. Therefore, Plaintiff and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. *Id*. Based on their evaluation, Plaintiff and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate for the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Agreement. *Id*.

## III.     THE PROPOSED SETTLEMENT

### A.     The Settlement Class

The proposed Settlement Class includes: All users and subscribers of the cellular telephone numbers and South Carolina area code telephone numbers identified in the Call Log as receiving an IHP Call from IHP's dialing system from October 22, 2015 through August 14, 2020. The following persons and entities are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) IHP, as well as any parent, subsidiary, affiliate or control person of IHP, and the officers, directors, agents, servants or employees of IHP; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any member of the

Settlement Class who has timely opted out of the Settlement; and (6) Class Counsel and their employees. Agreement at § III.

**B.      Settlement Relief**

The Settlement provides meaningful monetary and permanent injunctive relief.  Pursuant to the Agreement, IHP agrees to make available the Settlement Fund, which is the total of (1) $5,166,666.67 and (2) the actual costs of settlement notice and administration.  The Settlement Fund shall be used to pay all Approved Claim Payments and all Settlement Costs. Agreement at § IV. IHP also agrees to submit to a permanent injunction designed to prevent against the making of TCPA and SCTPPA violative calls that includes the following terms: (1) IHP will not make unsolicited telemarketing calls to telephone numbers that IHP determines to be cellular telephone numbers using Spitfire; (2) so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers; and (3) IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers. *Id.*

**C.      Service Award and Class Counsel Fees and Expenses**

Pursuant to the Agreement, Class Counsel will ask the Court to approve a service award to the Class Representative in an amount not to exceed $10,000.  The service award shall be paid to the Class Representative in addition to any Approved Claim Payment owed to the Class Representative.  The Parties agree that the Court's failure to approve, in whole or in part, a service award shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at ¶ 64.

Class Counsel will also request that the Court approve an award of attorneys' fees and reimbursement of documented costs and expenses in an amount not to exceed $1,289,166.67. The Parties agree that the Court's failure to approve, in whole or in part, any award of attorneys' fees and expenses shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at ¶ 63.

**D.     Notice Program**

Notice shall be provided to Settlement Class Members in two different ways: Mailed Notice and Long-Form Notice on the Settlement Website and to be sent to members of the Settlement Class upon request. The form of the proposed Mailed Notice and Long-Form Notice are attached as Exhibits 1 and 2 to the Agreement.

The proposed notices include, among other information: a description of the material terms of the Settlement, including how to file a Claim Form, a date by which members of the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which members of the Settlement Class may access this Agreement and other related documents and information.

The Settlement Administrator will receive the Call Log obtained by the Plaintiff in discovery and Settlement Class Member address information from Class Counsel and IHP and shall perform reverse telephone number look ups to determine available associated mailing addresses that might exist for any members of the Settlement Class for whom the Parties do not have such addresses, shall run addresses through the National Change of Address Database, and shall mail to all members of the Settlement Class postcards that contain details about the

Settlement ("Initial Mailed Notice") within 30 days of the entry of the Preliminary Approval Order.

The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. By way of example, a "reasonable" tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. The Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those members of the Settlement Class whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). The Settlement Administrator's continued efforts in connection with the Notice Re-mailing Process shall not affect or extend the Opt-Out and Objection Deadline.

The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 45 days before the Final Approval Hearing.

The anticipated administration costs are $82,608. Paronich Decl. at ¶ 12. Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for Mailed Notice to thousands of Class Members, plus mailing of the settlement checks.

## E.     Claims

To make a claim, members of the Settlement Class must submit by the Claims Deadline a valid and timely Claim Form, a copy of which is attached to the Agreement at Exhibit 3, by U.S. mail or through the Settlement Website. If a Settlement Class Member fails to fully complete a Claim Form, the Claim Form will be invalid and rejected by the Settlement Administrator. The Settlement Administrator will then attempt to notify the Settlement Class Member that the Claim Form was deficient and rejected. Any Settlement Class Member who submits an incomplete or

inaccurate Claim Form shall be permitted to re-submit a Claim Form by the later of the Claims Deadline or 14 days of the sending of notice of the defect by the Settlement Administrator. Agreement at ¶ 58.

Each Settlement Class Member who timely files with the Settlement Administrator a Claim Form that is determined by the Settlement Administrator to be an Approved Claim pursuant to the provisions of the Agreement shall receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call.

## F.     Opt-Out and Objection Procedures

Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the Fees, Costs, and Expenses Award, or the Service Payment must submit written objections to the Settlement Administrator (by postal mail) or the Court postmarked not less than 30 days prior to the Final Approval Hearing.  Any objection regarding or related to the Settlement Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Fitzhenry v. Independent Home Products, LLC*, 2:19-cv-02993-SAL " and must include:  a. the objector's full name (or, if a business, business name), address, telephone number, and telephone number at which the IHP Call(s) was (were) received; b. an explanation of the basis upon which the objector claims to be a member of the Settlement Class; c. the grounds for the objection, accompanied by legal support for the objection, if any; d. the identity of any counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application or who will appear at the Final Approval Hearing; and e. the objector's signature. Any Class Member who timely submits a written objection, as described in this paragraph, has

the option to appear at the Final Approval Hearing, either in person or through personal counsel, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed settlement, the Service Payment, or to the Fees, Costs, and Expenses Award. Only Settlement Class Members who submit timely objections may speak at the Final Approval Hearing. If a Settlement Class Member makes an objection through an attorney, the Settlement Class Member will be responsible for his or her personal attorney's fees and costs. The objection will not be valid if it only objects to the lawsuit's appropriateness or merits. Settlement Class Members who fail to object to the Settlement Agreement in the manner specified above will: (1) be deemed to have waived their right to object to the Settlement Agreement; (2) be foreclosed from objecting (whether by a subsequent objection, intervention, appeal, or any other process) to the Settlement Agreement; and (3) not be entitled to speak at the Final Approval Hearing.

Settlement Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement. Individual requests for exclusion may be submitted to the Settlement Administrator by postal mail. No mass opt-outs are allowed. All requests for exclusion must be in writing and must: (a) state the member of the Settlement Class's full name (or, if a business, business name), email address, address, and telephone number(s) at which the IHP calls were received); b. state that the member of the Settlement Class requests exclusion from, or "opts-out" of, the Settlement; c. be dated; and d. be signed by the member. A request for exclusion must be submitted on or before thirty (30) days prior to the Final Approval Hearing.

**G.     Release**

The Release is narrowly tailored under the Agreement and means all claims, demands, causes of actions, suits, damages, and/or fees arising under the TCPA and/or SCTPPA based on calls identified in the Call Log. Agreement at ¶ 28.

## IV.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that the Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the right to submit a claim and recover money if the Settlement is approved, the right to be heard on the Settlement's fairness, the right to opt out of the Settlement, and the date, time and place of the formal Settlement hearing. For the following reasons, certification of the Class for Settlement purposes is appropriate under Rule 23(a) and (b)(3).

**A.      Rule 23(a) requirements**

Numerosity is satisfied.

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984). The proposed Settlement Class consists of 46,831 members. *See* Paronich Decl. at ¶ 10. Numerosity is satisfied.

Commonality is satisfied.

Rule 23(a)(2) requires that there is "a common question of law or fact among the members of the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Here, the common questions are dispositive, apply equally to all class members, and can be resolved

using uniform proof and legal analysis. They include: (1) whether an automated telephone dialing system was used to place telemarketing calls to Settlement Class members without their consent; (2) whether IHP used a South Carolina caller ID without a South Carolina physical location to contact class members (3) whether IHP properly identified themselves on the calls; (4) whether IHP's conduct was willful or knowing such that Plaintiff and Settlement Class members are entitled to trebled damages under the TCPA; and (5) whether IHP's SCTPPA violations were willful. These legal and factual questions are shared by all class members, and the uniformity of the applicable law—the TCPA and SCTPPA—makes resolution of these questions on a class-wide basis viable and efficient.

<u>Plaintiff's claims are typical of the Settlement Class.</u>

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. Typicality is satisfied where the claims are based on the same legal theory. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) ("The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.") Typicality does not require that every class representative have exactly the same claims as every member of the class." *Moodie*, 309 F.R.D. at 378. Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: telemarketing calls placed to cell phones on behalf of IHP. Plaintiff and proposed Settlement Class members all seek statutory damages for these calls pursuant to the same legal theory. Typicality is satisfied.

Plaintiff and their counsel will adequately represent the
<u>proposed Settlement Class.</u>

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement involves "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

Both of these requirements are met. Plaintiff's interests in this litigation are aligned with those of the class. All seek recovery for unlawful robocalls calls, pursuant to the TCPA and/or SCTPPA. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. Class Counsel has vigorously litigated this action and will continue to vigorously prosecute this matter through completion. *See* Paronich Decl. ¶ 10 and Declaration of Avi Kaufman, attached as Exhibit 4, at ¶ 5. Adequacy is satisfied.

**B.      Rule 23(b)(3) requirements**

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S. Ct. 2179, 2184 (2011).

<u>Common issues predominate.</u>

The predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quotation and internal marks omitted). Predominance differs from the commonality requirement because it focuses "not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014).

This case is particularly well-suited for class treatment. The central issue in this case is whether IHP made telemarketing calls without consent. A trial would focus on whether the equipment used to place calls qualify as "automated telephone dialing systems" and/or whether calls were made using a prerecorded voice under the TCPA, whether calls to South Carolina telephone numbers (a) used a "spoofed" or non-working Caller ID number and/or (b) the number and address of the caller was not provided at the outset of the call; and/or (c) the caller did not disclose that the call recipient had the option to be added to the telephone solicitor's in-house "do not call" list, and whether IHP's conduct was knowing and willful.

<u>A class action is superior.</u>

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. The superiority requirement is often met where, as here, class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) (class treatment superior where it lowers litigation costs "through the consolidation of recurring common issues").

Since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") And, resolution of tens of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication. *See Gunnells*, 348 F.3d at 427 (noting class litigation "promotes consistency of results, giving defendants the benefit of finality and repose").

### V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

**A.     The settlement approval process**

A class action settlement requires court approval. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *id*. at 158-159. The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *id.*; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). Approval of a class action settlement is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litig.* ("MCL 4th") § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.,* No. 97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing MCL 4th's two-step process). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the class is notified and a fairness hearing scheduled at which the Court determines whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.,* No.

11-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1 (5th ed. updated December 2016).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (holding that question at preliminary approval stage is simply whether there is "probable cause" to justify notifying class members of proposed settlement).

**B.    Criteria for settlement approval**

Fairness and adequacy are the touchstones of class action settlement approval. *Jiffy Lube*, 927 F.2d at 158. The factors that merit consideration during the approval process may be broken down into two major categories: those which go to "fairness" and those which go to "adequacy" of a settlement. *Id.*

The proposed Settlement Agreement is fair.

Courts consider the following factors when determining whether a proposed settlement is fair: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. All four factors favor approving the settlement here. "District courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-

02927-JDA, 2019 U.S. Dist. LEXIS 26450, at *23 (D.S.C. Feb. 14, 2019) (internal citations omitted). Here, the parties reached a settlement after fully briefing IHP's dispositive motion to dismiss or to strike class allegations and the motion to stay. Paronich Decl. ¶ 8. IHP produced thousands of pages of documents, including leads lists, call logs, dialer manuals and specifications, and financial documents. *Id.* Plaintiff also took IHP's corporate representative deposition. *Id.* Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive formal and informal discovery with DefendantClass Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations and they have exceeded the work often done in class actions to conduct a thorough analysis of the issues. *See, e.g., Robinson*, 2019 U.S. Dist. LEXIS 26450, at *23; *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Paronich Decl. ¶ 13; Holderman Decl. ¶ 4-7. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases.  Paronich Decl. ¶ 7. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation and continue to do so.

The parties reached agreement only after mediating for a full day with the assistance of Hon. James Holderman (Ret.), a JAMS mediator with TCPA. Paronich Decl. ¶ 9. At all times the

negotiations were at arms' length and free from collusion. *Id.* Plaintiff's counsel steadfastly advocated for substantial settlement relief, but at the same time were pragmatic about IHP's ability to pay a large judgment. *Id.* Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risk that they would lose the motion to stay causing a significant delay and face a potential change in law impacting Plaintiff's autodialer claim. *Id.* Plaintiff relied on the judgment of their counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. *Id.* In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

The proposed Settlement Agreement is adequate.

In determining whether a settlement is adequate, courts consider (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

The most important factor in weighing the adequacy of a proposed settlement is the strength of the plaintiff's claims on the merits combined with any difficulties the plaintiff would likely encounter if they chose to litigate on their own. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendant denies any liability and is

18

willing to litigate vigorously.  Paronich Decl. ¶ 10. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. *Id*. Plaintiff's counsel also has taken into account the strength of Defendant's defenses, difficulties in proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. Even if Plaintiff prevailed on the merits, there would be significant challenges in collecting any judgment, especially in light of the financial condition of IHP, particularly as a result of the Covid-19 pandemic and as supported by the financial documents provided by IHP to Plaintiff. *Id*. Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class. Based on their evaluation of all of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class, who otherwise may have received nothing.  Paronich Decl. ¶.

The monetary relief and permanent injunctive relief place the Settlement well within the range of possible approval. Moreover, Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).  Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

This Settlement provides an excellent result for the class—providing permanent injunctive relief and monetary relief. Even without consideration of the significant permanent injunctive relief, the Settlement is in line with other TCPA settlements approved across the country. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD),  2015 U.S. Dist. LEXIS 137299, at *19 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member).

For all these reasons, the settlement is well-within the range of reasonableness and is fair and adequate. It should be approved and notice sent to the Settlement Class. *See Robinson*, 2019 U.S. Dist. LEXIS 26450, at *31 (preliminarily approving settlement where it provide[s] significant relief for the Settlement Class quickly).

## VI. THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MCL Fourth § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice program satisfies this standard. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service award, for opting-out of the Settlement, for submitting a claim, and how to obtain additional information about the Settlement. Through the direct Mailed Notice and Long Form Notice on the Settlement Website, the Notice Plan is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process.

The proposed forms of notice, attached as Exhibits to the Settlement Agreement, are clear, straightforward, and provide Settlement Class members with enough information to evaluate whether to participate in the settlement. Thus, the Notices satisfy the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining

a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement). The Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VII. PROPOSED SETTLEMENT APPROVAL SCHEDULE

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, and P.O. Box to accept inquiries from Settlement Class Members | On or before initiation of Mailed Notice |
| Settlement Administrator provides Initial Mailed Notice to Settlement Class Members | On or before 30 days after entry of this Order |
| Last day for Settlement Class Members to submit Claim Forms, object, or request exclusion from the Settlement Class | On or before 30 days before Final Approval Hearing |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | On or before 15 days before Final Approval Hearing |
| Last day for IHP to file optional brief in support of Settlement | On or before 7 days before Final Approval Hearing |

| Final Approval Hearing | At least 120 days after entry of the Preliminary Approval Order |
|---|---|

## VIII.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion and enter the submitted Proposed Order, preliminarily approve the parties' proposed Settlement Agreement, and establish a schedule to complete the tasks necessary to effectuate the proposed settlement.

A proposed Preliminary Approval Order is attached as Exhibit 5.

## IX. LOCAL RULE 7.02 COMPLIANCE

Pursuant to Local Rule 7.02 the Parties have consulted prior to the filing of this motion and respectfully request the Court grant this Motion.

DAVE MAXFIELD, ATTORNEY, LLC

By:    */s/ Dave Maxfield*
David A. Maxfield, Fed. ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Avi R. Kaufman
kaufman@kaufmanpa.com

KAUFMAN P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881

DATED: September 4, 2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 4, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, which is being served this day on all

counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

_/s/ Dave Maxfield_____
David A. Maxfield, Fed. ID 6293