UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-02993-SAL |
| Plaintiff, | |
| Vs. | |
| INDEPENDENT HOME PRODUCTS, LLC, | |
| Defendant. | |

**CLASS COUNSEL'S MOTION FOR SERVICE AWARD AND CLASS
COUNSEL FEES AND COSTS AND INCORPORATED MEMORNADUM IN SUPPORT**

As explained in Plaintiff's preliminary approval papers and further herein, Plaintiff Mark Fitzhenry ("Plaintiff") and Defendant Independent Home Products, LLC ("IHP") reached a Class Action Settlement Agreement and Release in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 (the "Agreement" or "Settlement"). The Agreement[1], which this Court preliminarily approved on October 1, 2020[2], provides exceptional relief to the Settlement Class. The Agreement requires IHP to make available $5,166,666.67 and the actual costs of settlement notice and administration for the benefit of Plaintiff and proposed class members, and provides meaningful injunctive relief, which itself is valued at $5,167,649. *See* Economic Assessment of Permanent Injunctive Relief in Class Action Settlement Agreement, prepared by J. Herbert Burkman, Ph.D., attached hereto as Exhibit 1 ("Burkman Report"). Accordingly, Plaintiff Mark Fitzhenry and Class Counsel

---

[1] *See* ECF No. 29-1.  Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

[2] *See* ECF No. 33.

1

hereby move the Court for entry of an order granting a service award to Plaintiff and Class Counsel's attorneys' fees and costs.

## I.    <u>INTRODUCTION</u>

The Agreement, which is subject to this Court's final approval, requires IHP to make available $5,166,666.67 and the actual costs of settlement notice and administration for the benefit of Plaintiff and proposed class members. All class members who submit a simple claim form available both electronically and through the mail will receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call, which far exceeds the typical value of rewards in such settlements.

The settlement also provides meaningful injunctive relief, which has been valued at over $5 million. *See* Burkman Report. Pursuant to the settlement, IHP agrees to submit to a permanent injunction designed to prevent against the potential violation of the TCPA or SCTPPA. First, IHP will not make unsolicited telemarketing calls to telephone numbers that IHP determines to be cellular telephone numbers using Spitfire[3]. Second, so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers. Finally, IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers.

Class Counsel now seek approval of a service award for Plaintiff Mark Fitzhenry, a fee award for Class Counsel that is reasonable and in line with the awards issued by courts faced with similar settlements throughout this Circuit, which will be inclusive of reimbursement of

---

[3] Spitfire is a third-party dialing service software that also offers the ability to determine if numbers that are going to be called are cellular telephone numbers.

Class Counsel's reasonable expenses as provided in the Agreement.

Specifically, for the reasons set forth in this memorandum and in the papers previously submitted in support of approval, pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel respectfully request that the Court enter an order approving an award of $10,000 to Plaintiff for his service as the Class Representative and approving Class Counsel's requested attorneys' fees and out-of-pocket litigation costs of $1,289,166.67, equal to approximately one quarter of the Settlement Fund, and, with the value of injunctive relief, is equal to approximately one eighth the total value to the settlement class.  These requests are in line with amounts approved in similar Telephone Consumer Protection Act class action settlements across the country and in this Circuit. The amounts also reflect the risk and exceptional results corresponding to this case, and were specifically included in the Notice documents to the Class.[4] Accordingly, Class Counsel respectfully request that the Court approve the requested service award, fees, and costs at or after the fairness hearing.[5]

## II.     BACKGROUND

### a.     Facts

The Plaintiff has brought this putative class action pursuant to the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). Mr. Fitzhenry has alleged that the Defendant sent him an automated telemarketing call

---

[4] The Court-approved Notice documents advise class members that Class Counsel intend to request fees and reimbursement of out-of-pocket expenses in an amount not to exceed $1,289,166.67, and a service award not to exceed $10,000 for the Class Representative's service as representative on behalf of the Class. *See* ECF 29-1 at Exhibits 1 and 2.

[5] The Plaintiff's Final Approval Motion will include a proposed order that will address the relief sought in this motion.

promoting Independent Home's products without prior express written consent and did so using an ATDS. *See* ECF No. 1 at ¶2. Mr. Fitzhenry has also alleged a violation of the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq.* since the telemarketing call was made using a "spoofed" or non-working Caller ID number; the number and address of the caller was not provided at the outset of the call; and the caller did not disclose that the call recipient had the option to be added to the telephone solicitor's in-house "do not call" list. Each of which is a separate violation of the SCTPPA. *See* ECF No. 1 at ¶ 57.

### b. **Procedural History**

On October 22, 2019, Plaintiff initiated this litigation against IHP in the United States District Court for the District of South Carolina, alleging violations of the TCPA and SCTPPA/ *See* ECF No. 1. On December 23, 2019, IHP filed a motion to dismiss and to strike class allegations (ECF No. 8), and Plaintiff responded on December 27, 2019 (ECF No. 10). IHP replied on January 3, 2020 (ECF No. 11). IHP then filed a motion to stay the action pending FCC guidance on the definition of an automatic telephone dialing system under the TCPA on February 3, 2020 (ECF No. 13), to which Plaintiff responded on February 10, 2020 (ECF No. 14). IHP replied on February 18, 2020. (ECF No. 15). The parties also engaged in discovery, which included production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue, IHP financial documents, and the deposition of IHP's corporate representative. *See* Exhibit 2, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 5.

On August 13, 2020, the parties engaged in a full-day mediation session with the assistance of Hon. James Holderman (Ret.) of JAMS, and after a full-day of negotiations, a settlement was reached and documented in a settlement term sheet signed by authorized representatives of each side and their Counsel.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. Paronich Decl. ¶ 7. Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, particularly as a result of the Covid-19 pandemic and supported by the financial documents provided by IHP to Plaintiff, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and particularly the risk that a change in the law, including a ruling by the Supreme Court or this Court concerning the constitutionality of the TCPA or an interpretation from the Supreme Court or Federal Communications Commission regarding what constitutes an autodialer under the TCPA, could nullify Plaintiff's claims. *Id.*; *see Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631; *Facebook, Inc. v. Duguid*, No. 19-511; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020). Based on their evaluation of all these factors, Plaintiff and Plaintiff's counsel determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. Paronich Decl. at ¶ 7.

The Settlement Agreement establishes a Settlement Class of:

> All users and subscribers of the cellular telephone numbers and South Carolina area code telephone numbers identified in the Call Log as receiving an IHP Call from IHP's dialing system from October 22, 2015 through August 14, 2020.

Agreement at § III. The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendant's defenses, the uncertainties of contested litigation, Defendant's financial condition, and the everchanging TCPA landscape, including district

courts' ongoing scrutiny of the constitutionality of the TCPA, and the Supreme Court's and

FCC's pending decisions regarding the TCPA's autodialer provision. *See* Paronich Decl. at ¶ 7.

### III.     THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS REASONABLE AND SHOULD BE APPROVED

Class Counsel respectfully request a Service Award for the Class Representative in the

amount of $10,000. "Incentive or service awards reward representative plaintiffs' work in

support of the class, as well as their promotion of the public interest and courts around the

country have allowed such awards to named plaintiffs or class representatives." *Robinson v.*

*Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *51

(D.S.C. June 21, 2019) (internal citation omitted) (awarding plaintiff $15,000 as "well within

the range of reasonable incentive awards approved by courts.").

Mr. Fitzhenry's participation led to benefits to the Settlement Class valued at over $10

million, including requiring IHP to make over $5.166 million available for the Class and

meaningful injunctive relief. Plaintiff invested his time into this litigation. In fact, Mr. Fitzhenry

engaged in an extensive investigation to allow this claim to proceed. *See* Exhibit 3, Declaration

of Mark Fitzhenry at ¶ 3. When Mr. Fitzhenry received the call that is the subject of the lawsuit,

the individual identified themselves as "Superior Bath and Showers" and did not provide an

address or phone number. *Id.* at ¶ 4. This is not a company as Mr. Fitzhenry found out after

about an hour of online research, including Secretary of State filings. *Id.* at ¶ 5. As a result, Mr.

Fitzhenry needed to engage the caller in a follow up call to identify them. To do so, he set a

physical appointment with Doug Fannin at his home where he had to prepare his home and

engage in the visit appearing to need the walk-in tub services that the defendant provides, which

lasted approximately two hours. *Id.* at ¶ 6.

When the lawsuit was filed, Mr. Fitzhenry took personal time to seek out and speak with Class Counsel, search for relevant evidence, review and approve the complaint for filing, keep apprised of the progress of the litigation, prepare for mediation, evaluate the settlement proposals during mediation, and read through and discuss drafts of the Settlement Agreement with Class Counsel before executing them. *Id.* at ¶ 7-10. This sacrifice was made to support a case in which he had a relatively modest personal interest, but that has and will continue to provide benefits to thousands of Settlement Class Members and the general public, warranting the Court's approval of the requested service award. In fact, the Plaintiff's recovery for his individual claims could have exceeded the proposed

Class Counsel's request for a service award to Plaintiff of $10,000 is in fact on the lower end of incentive awards that courts have approved in comparable TCPA matters. *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

At the preliminary approval hearing, this Court asked Class Counsel to discuss the recent Eleventh Circuit Court of Appeals decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). As an initial matter, the Fourth Circuit has endorsed the practice of approving class action service awards to plaintiffs, including as recently as this year. *See Cantu-Guerrero v.*

*Lumber Liquidators, Inc. (In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.),* 952 F.3d 471, 478 (4th Cir. 2020) (affirming Settlement Approval Order that includes a service award of $5,000 to each of the named plaintiffs). This supports the conclusion that *Johnson*, a first of its kind decision, is an outlier and inconsistent with current jurisprudence, as explained by Judge Martin's dissent:

> The majority's decision to do away with incentive awards for class representatives in class actions takes our court out of the mainstream. To date, none of our sister circuit courts have imposed a rule prohibiting incentive awards…But upon deciding to undertake this issue here, the majority skips any analysis about our modern authority to approve these awards. It goes straight to decisions from the 1880s that do not reflect the current views of the Supreme Court or other circuits. The majority never properly addresses the main issue before us: whether the incentive award created a conflict between Mr. Johnson and absent class members. I would answer this question by engaging in the fairness analysis called for by our precedent. And that analysis leads me to say the District Court did not abuse its discretion  in approving an award of $6,000 to Mr. Johnson.

*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). Indeed, the only reported decisions outside of the Eleventh Circuit that have considered *Johnson* have rejected applying it to their approval of class settlements. *See Somogyi v. Freedom Mortg. Corp.,* No. 17-6546 (RMB/JS), 2020 U.S. Dist. LEXIS 194035, at *27 (D.N.J. Oct. 20, 2020) (Approving a TCPA settlement holding "there is substantial precedent from this Circuit supporting approval of incentive payments. Until and unless the Supreme Court or Third Circuit bars incentive awards or payments to class plaintiffs, they will be approved by this Court if appropriate under the circumstances. Here the incentive payments to the class plaintiffs is appropriate given their substantial contribution to the successful settlement of the case."); *Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *31 (S.D.N.Y. Sep. 22, 2020) (discussing *Johnson* and then awarding each class representative $5,000).

Given Plaintiff's personal contribution to the successful prosecution of this action, Plaintiff should be granted a service award in the amount of $10,000.

### IV.    CLASS COUNSEL'S APPLICATION FOR FEES AND EXPENSES IS FAIR, REASONABLE, AND JUSTIFIED, AND SHOULD BE APPROVED

The Settlement permits Class Counsel to apply to the Court for attorneys' fees and expenses. Given the outstanding outcome, Class Counsel request approval of attorneys' fees and out-of-pocket expenses totaling $1,289,166.67, which represents approximately one quarter of the Settlement Fund, and only one eighth of the total value of the Settlement to the Class, and includes $20,275.38 for documented reasonable out-of-pocket expenses.

Rule 23 permits a court to award "reasonable attorney's fees… that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *United States v. Tobias*, 935 F.2d 666, 667 (4th Cir. 1991) (explaining equitable basis of the "common fund" doctrine).

Although the Fourth Circuit has not required a particular method for calculating attorney's fees in common fund cases, "[w]ithin this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) (citing cases).[6] Last year

---

[6] *See also Jones v. Dominion Resource Services, Inc.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that a district court abused its discretion by calculating fees strictly based on the dollar amount paid to approved claimants, and expressly rejected the idea that basing an award on the benefit available to the class would create a windfall for class

the Fourth Circuit Court of Appeals acknowledged the propriety of the holding in *Savani* when affirming a fee award and recognizing that *Savani* awarded nearly 40% of the common fund. *See Brundle v. Wilmington Tr., N.A.,* 919 F.3d 763, 788 (4th Cir. 2019) (citing *Savani* and explaining: "Had Brundle pursued class certification and prevailed, B&G could have secured attorneys' fees from the class as a whole. Although a properly certified class might not have agreed to the same one-third contingency fee that Brundle did, the district court might well have awarded a fee significantly higher.").

"The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorney's fees on an hourly basis." *DeWitt v. Darlington Cty.*, Civil Action No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *19 (D.S.C. Dec. 6, 2013). Moreover, the percentage of fund approach eliminates the burden on the court to engage in a detailed review and calculation of attorneys' hours and rates. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010). "It is also viewed as the preferable method in cases such as this one, where the Plaintiff[] agreed to pay counsel on a contingency fee basis." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 09-0054, 2012 WL 5430841, at *2 (D.S.C. Nov. 7, 2012).

An award of attorney's fees in a class action must be "reasonable." Fed. R. Civ. P. 23(h). Although the Fourth Circuit has not yet identified factors for district courts to apply when assessing the reasonableness of a proposed percentage award, the Circuit has, in at least one case,

---

counsel). As the Second Circuit reasoned in *Masters*, "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Id.*

utilized a set of factors identified and employed by Fifth Circuit. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978). Accordingly, many district courts employ these so-called *Barber* factors,[7] an approach the Fourth Circuit has affirmed. *In re MRRM, P.A.*, 404 F.3d 863, 867–68 (4th Cir. 2005) (holding that the district court reasonably applied the *Barber* factors when assessing a common fund fee award). The *Barber* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 & n.28. At bottom, the twelve *Barber* factors focus the Court's analysis on four main issues: the value of counsel's work and the results obtained (factors 3, 8, and 9); the risks and obstacles counsel faced (factors 2, 4, 6, 7, and 10); and quantitative inputs like time and labor expended, the customary fee for like work, and other awards in similar cases. (factors 1, 5, 7, and 12).[8]

---

[7] *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, *1 (M.D.N.C. 2007) (applying *Barber* factors to a percentage award); *Edmonds v. U.S.*, 658 F. Supp. 1126, 1143 n.37 (D.S.C. 1987) ("The [*Barber*] factors . . . can be used in analyzing a fee either based on the percentage method, or the lodestar method.").

[8] Recognizing that *Barber* is not a common fund case, some other district courts in this Circuit have instead looked to the seven-factor test adopted by the Third Circuit in *In re Cendant Corp. Prides Litig.* to determine the amount of a reasonable percentage award. *See In re Wachovia Corp. ERISA Litig.*, 2011 WL 5037183, *3–4 (W.D.N.C. 2011) (citing cases). The *Cendant* factors include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar

All of these factors weigh in favor of approving the requested attorneys' fees.

**a.  Class Counsel Achieved Exceptional Results for the Class**

In determining whether a fee award is reasonable, the most critical factor is the results achieved, *i.e.*, the overall result and benefit to the class from the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006); *In re Abrams & Abrams, P.A.*, 605 F.3d at 247 (internal quotation marks omitted). This factor addresses monetary relief as well as the injunctive relief. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (the right to fees "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others").

As described above, the Settlement provides benefits to the Settlement Class valued at over $10 million, including requiring IHP to make monetary relief of over $5.166 million available for the Class and providing meaningful injunctive relief valued at over $5 million. Each claimant will receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call, which far exceeds the typical value of rewards in such settlements. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member  would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30);

---

cases.

*Id.* (internal quotation marks omitted). Under either set of guidelines, however, the Courts reasonableness analysis would focus on the four categories described above.

12

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* Dkt. Nos. 109 at 10, 116 at 6, and 137)*. See also Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher).

Pursuant to the settlement, IHP also agrees to submit to a permanent injunction designed to prevent against the potential violation of the TCPA or SCTPPA. First, IHP will not make unsolicited telemarketing calls to telephone numbers that IHP determines to be cellular telephone numbers using Spitfire[9]. Second, so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers. Finally, IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers.

To assign a dollar value to the injunctive relief provided to the Class, J. Herbert Burkman, Ph. D. was engaged to perform an economic assessment. Dr. Burkman has been accepted as an expert for valuing injunctions and remedial relief in TCPA settlements. *See De*

___
[9] Spitfire is a third-party dialing service software that also offers the ability to determine if numbers that are going to be called are cellular telephone numbers.

13

*Los Santos v. Milward Brown, Inc.*, Civil Action No. 9:13-cv-80670, ECF No. 82-3 and 84 (S.D. Fla., Sep. 11, 2015) (Order granting final approval to a TCPA class action settlement aided by Dr. Burkman's analysis of the future remedial relief).

Dr. Burkman's assessment relies on a consumer willingness-to-pay model with an annual price to avoid displeasure and for purchasing privacy of $6.60, or $0.55 a month. *Id*.[10] The study concludes that for the nationwide TCPA class, the most conservative measure of injunctive relief is $2,930,920 (see Appendix 1, Table 1 and Table 1.A). For members of the public in South Carolina, the most conservative measure of injunctive relief is $2,236,729 (see Appendix 1, Table 2 and Table 2.A).  Accordingly, the total value of injunctive relief is $5,167,649. The report emphasizes that this assessment does not cover any additional broad societal interests and their values and remains a conservative assessment of the value of the injunctive relief provided by the Settlement Agreement in this matter. *Id*.

The quality of Class Counsel's representation in this case also supports the fee award. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The quality of Class Counsel's legal work is evidenced by the substantial benefit conferred to the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

Class Counsel's analysis of the issues in this action, litigation strategy and diligence in prosecuting this action support the requested award. Class Counsel vigorously litigated this

---

[10] The conservative nature of this estimate is further demonstrated by the fact that such products do exist and consumers can purchase them for $2-5 a month. *See* Your Money: Should you pay to stop phone spam, May 15, 2019, available at: https://www.reuters.com/article/us-money-telecoms-robocalls/your-money-should-you-pay-to-stop-phone-spam-idUSKCN1SL185 (Last Visited Oct. 28, 2020).

matter. Paronich Decl. at ¶ 5-7. Class Counsel's work was necessary to stop the complained of practice, resolve this action, and obtain significant monetary relief for the Settlement Class. Plaintiff and the Settlement Class benefited from the high caliber representation of Class Counsel, including Class Counsel's extensive TCPA class action experience. Paronich Decl. at ¶ 16, and Exhibit 4, Declaration of Avi R. Kaufman ("Kaufman Decl.") at ¶ 5.

Given the monetary and injunctive benefit to the Settlement Class, financial condition of IHP, risks of litigation, the ever-changing TCPA landscape, and the likelihood that IHP's TCPA violative calls would have continued absent this litigation, Class Counsel obtained an exceptional result.

### b.  The Risks of Litigation and the Novelty and Complexity of the Issues Justify the Requested Fees

Courts have long recognized that "particularly in class action suits, there is an overriding public interest in favor of settlement,' ... because ... 'class action suits have a well-deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.'" *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474-Goodman, 2016 U.S. Dist. LEXIS 50315, at *26 (S.D. Fla. Apr. 13, 2016).

"The importance of ensuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Berry v. Wells Fargo & Co*., No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *35 (D.S.C. July 29, 2020) ("class counsel undertook to prosecute this action without any assurance of payment for their

services. Counsel's entitlement to payment was entirely dependent upon achieving a good result for Plaintiff and the class. Contingency fee arrangements are customary in class action cases and such arrangements are usually one-third or higher. Therefore, this factor supports the reasonableness of the requested fee award" (internal citation omitted)).

Because Class Counsel were working entirely on a contingency basis, only a successful result – at trial or by settlement – would result in any fees and recovery of costs. Paronich Decl. at ¶ 30. Nevertheless, Class Counsel spent nearly six hundred hours and twenty thousand dollars to zealously promote the Class's interests. Paronich Decl. at 21; Kaufman Decl. at ¶ 13; Declaration of David Maxfield (attached hereto as Exhibit 5) at ¶ 9. The contingent nature of Class Counsel's representation strongly favors approval of the requested fee.

In addition to the risks posed by virtue of proceeding with a contingency class action, "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-7 (internal citation omitted). The risk of no recovery here—and in complex cases of this type more generally—is real.  In numerous hard-fought lawsuits, plaintiffs' attorneys (including the undersigned) have received little or no fee—despite *years* of excellent, professional work—due to the discovery of facts unknown when the case started, changes in the law while the case was pending, or a decision of a judge, jury, or court of appeals.  *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012) (affirming district court's ruling overturning jury verdict in favor of plaintiff class); *In re Oracle Corp. Secs. Litig.,* No. 01- cv-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment for defendants after eight years of litigation). Here, major hurdles remain in this litigation, including class certification

and summary judgment. In fact, despite their experience in TCPA cases, counsel for the

Plaintiff have also lost a number of cases despite substantial time and financial investment. *See*

*e.g. Cooley v. Freedom Forever*, No. 2:19-CV-562 JCM (NJK), 2019 U.S. Dist. LEXIS 228402

(D. Nev. Nov. 25, 2019) (Granting motion to dismiss); *Berman v. Freedom Fin. Network, LLC*,

No. 18-cv-01060-YGR, 2019 U.S. Dist. LEXIS 25382 (N.D. Cal. Feb. 15, 2019); *Childress v.*

*Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M.

Sept. 28, 2018) (granting motion to dismiss); *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-

587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) (granting motion to dismiss);

*Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429 (C.D. Cal. July 24, 2018), ECF

No. 34 (denying class certification); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S.

Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) (granting motion to dismiss); *Donaca v. Dish*

*Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) (denying class certification); *Fitzhenry v. ADT*

*Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla.

Nov. 3, 2014) (denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718,

2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014) (denying class certification); *Mey v.*

*Pinnacle Sec., LLC*, Civil Action No. 5:11CV47, 2012 U.S. Dist. LEXIS 129267 (N.D.W. Va.

Sept. 12, 2012) (granting summary judgment).

     Class Counsel accepted substantial risk in taking this case given the possibility that this

Court, the Supreme Court, or FCC could take action that might extinguish Plaintiff's claims.

     First, while this case was pending, the Supreme Court assessed the constitutionality of the

TCPA in *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784

(2020) (July 6, 2020). At issue in that case was a 2015 congressional amendment to the TCPA's

general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by

the federal government. In *Barr*, the Supreme Court struck that down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Id.* However, defendants in TCPA cases have proffered the argument that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law and that as a result any alleged TCPA violations during that time are not enforceable in federal court. Indeed, one such federal court has adopted this interpretation. *See Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020). As such, the Settlement Class members risked recovering *nothing* if this Court or the Fourth Circuit sided with the Court in *Creasy*.

Another substantial risk in this case focuses on the question of whether the dialing system used by Defendant is an "Automatic Telephone Dialing System" under the TCPA. This question is set to be answered by the Supreme Court, which is evaluating the Ninth Circuit's holding in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), during the 2021 term. The dialing system allegedly used by Defendant is less likely to be found to be an ATDS in the 3rd, 7th and 11th Circuit due to recent developments in those Circuits. Specifically, those decisions are *Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir. 2020); *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there was a likelihood that, given the split in authority, Supreme Court review could result in a less favorable ATDS interpretation. Notably, Justice Amy Coney Barrett wrote the decision for the Seventh Circuit in *Gadelhak*.

If the Supreme Court were to agree with the Third, Seventh or Eleventh Circuit Court of Appeals, no one, including the Plaintiff, would have been able to recover *anything at all* for any calls made to their cellular telephones with a dialing system that they contend to be an ATDS. Other courts have adopted the same position. *See e.g. Marshall v. CBE Group, Inc*., Case No. 2:16-cv-02046-GMN, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018); *Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Keyes v. Ocwen Loan Servicing*, No. 17-cv-11492, 2018 U.S. Dist. LEXIS 138445, at *15 (E.D. Mich. Aug. 16, 2018).

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

The risks of the litigation, including the ever-changing TCPA landscape, the complexity of the issues involved, and the contingent nature of Class Counsel's representation justify the requested fees. *See Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 166484, at *19 and *35 (N.D. Cal. Dec. 11, 2015) (awarding class counsel fees of one third of

common fund based in part on the significant risks of litigation including potential changes in law and contingent nature of engagement.)

In addition, in a TCPA case such as this, the potential damages could bankrupt IHP. Unlike a large public company with extensive financial resources, IHP is a small, privately-held company. As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added). The typical risks of nonpayment are accentuated in the current economic client where the country is facing the COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.

### c.  Awards in Similar Cases Demonstrate the Requested Fees are Reasonable

Class Counsel's request for an award of attorneys' fees of less than one quarter of the Settlement Fund, and less than one eighth of the total settlement value to the Class, is well within the range of fee awards in cases across the country. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2019 U.S. Dist. LEXIS 220380, at *2 (M.D.N.C. Dec. 23, 2019) (Court awarded attorney's fees of one-third of a $61,000,000 judgment in TCPA case);

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016) (affirming attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector, and where the fund includes a reverter provision); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sep. 27, 2018) (approving fees of 30% of the settlement fund in a TCPA case which settled after briefing of and prior to ruling on defendant's motion to dismiss and motion to stay); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees of one-third on TCPA class action); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000 TCPA settlement fund); *Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019) (awarding Class Counsel fees of one-third the Settlement Fund in a TCPA class action).[11]

Class Counsel is requesting attorneys' fees in the amount of less than one quarter of the Settlement Fund, and of just one eighth of the total value of the Settlement to the Class, which is justified in light of the excellent outcome, when compared to the risks attendant to this Action and the fees awarded in similar class actions. Paronich Decl. at ¶¶ 3, 11.

---

[11] *See also Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total fund); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund).

### d. A Lodestar Cross-Check Confirms
### the Reasonableness of the Requested Fees

As stated earlier, the percentage-of-fund method is the "preferred" approach in the Fourth Circuit, and comports with class action practice nationwide, where the "vast majority" of courts of appeal now direct or permit district courts to award a percentage from the common fund. Manual for Complex Litig., § 14.121 (4th ed. 2004). The percentage method provides "appropriate financial incentives" necessary to "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y 2005). In addition, "from a public policy standpoint, the [percentage] method of calculating fees more appropriately aligns the interests of the class with the interests of class counsel—the larger the value of the settlement, the larger the value of the fee award." *Bussie v. Allmerica Financial Corp.*, No. 97-40204, 1999 WL 342042, at *2 (D. Mass. May 19, 1999) (internal quotation marks and citations omitted).

Despite the advantages and popularity of the percentage-of-fund method, however, some Courts employ what is known as a lodestar crosscheck—analyzing the value of counsel's work in relation to their hours and hourly billing rates—to confirm the reasonableness of the percentage award. Although such analysis is unnecessary and, in some respects, problematic,[12] a lodestar crosscheck in this case provides further support for Class Counsel's requested fee.

---

[12] In many respects, the lodestar crosscheck reintroduces the same bad policy and perverse incentives that the increasingly popular percentage-of-fund method has overcome. If class counsel believe that courts will limit their fee to some multiple of their lodestar, then they will have the same undesirable incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and overstaff work in order to run up their lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n. 5 (9th Cir. 2002) ("The lodestar method is merely a cross- check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to

To calculate the lodestar, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation … by a reasonable hourly rate for the region and for the experience of the lawyer." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011). This base "unadorned" lodestar figure is "presumptively reasonable." *Id.* "Courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.  In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (internal citation omitted). "When using lodestar method as a "cross-check," the Court needs not apply the "exhaustive scrutiny" typically mandated, and the Court may accept the hours estimates provided by Lead Counsel." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009).

Class Counsel have invested nearly 600 hours prosecuting Plaintiff's and the Class's claims through October 31, 2020. Additionally, Class Counsel expect to invest at least another 50 hours communicating with Settlement Class Members, preparing for and attending the Final Fairness Hearing, including drafting a motion for final approval, managing the claims process,

---

expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). The lodestar crosscheck also caps the amount of compensation class counsel can receive from a settlement, thereby misaligning their incentives from those of class members, and blunting their incentive to achieve the largest possible award for the class. *See* Fitzpatrick, *Class Action Lawyers*, *supra*, at 2065-66. For example: suppose a class action lawyer had incurred a lodestar of $1 million in a class action case. If that counsel believed that a court would not award him a one-third fee if it exceeded twice his lodestar, then he would be rationally indifferent between settling the case for $6 million or $60 million.

and tending to any claims-administration issues that arise. Paronich Decl. ¶ 27. Through the settlement, Class Counsel will have a lodestar of $371,010. Paronich Decl. ¶ 21; Kaufman Decl. ¶ 13; Maxfield Decl. ¶ 11. Counsel have provided summaries of their work in order to "identify the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" satisfies the "basic requirement"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005) (The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts "need not review actual billing records" and are free to rely on time summaries submitted by attorneys.)

Class Counsel's requested attorneys' fee award here is $1,268,891.29, which represents application of a multiplier of approximately 3.42 to Class Counsel's lodestar. "Courts have generally held that a lodestar multiplier falling between 2 and 4.5 demonstrate a reasonable attorney's fees." *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 U.S. Dist. LEXIS 112985, at *6 (D.S.C. Aug. 26, 2015); *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *40 (D.S.C. July 29, 2020) ("lodestar multiplier of 4.24—well within the range routinely approved"); *Vizcaino*, 290 F.3d at 1051, n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0, and affirming a multiplier of 3.65); *Kay Co.*, 749 F. Supp. 2d at 470 (approving a requested fee amount that produced a lodestar multiplier between 3.4 to 4.3 times the lodestar amount). The requested multiplier is appropriate when comparing the benefits of the Settlement to the risk of non-payment for Class Counsel's significant investment of attorney time and out of pocket cost.

### i. **The Hours Class Counsel Have Expended Are Reasonable**

Class Counsel have devoted nearly 600 hours to this litigation, and anticipate investing an additional 50 hours between drafting a final approval motion, preparing for the final fairness hearing, and continuing to oversee the case and settlement administration process. Paronich Decl. ¶ 21-27; Kaufman Decl. ¶ 13; Maxfield Decl. ¶ 11. Courts should defer to successful counsel's judgment as to how much work was needed to succeed. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). Class Counsel's hours are not excessive or otherwise unnecessary.

Class Counsel have exerted significant effort to achieve the excellent results reflected in the Settlement. Class Counsel opposed Defendant's dispositive motion to dismiss and a motion to stay the action filed by Defendant. Paronich Decl. ¶ 24; Kaufman Decl. ¶ 16; Maxfield Decl. ¶ 8. The efforts to date also include discovery involving, among other things, production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue, IHP financial documents, and the deposition of IHP's corporate representative. Paronich Decl. ¶ 23; Kaufman Decl. ¶ 15.

Class Counsel engaged in extensive settlement negotiations, drafting a comprehensive mediation statement and attending a full-day mediation. Class Counsel also spent time documenting the Settlement and drafting the notice documents; moving for preliminary approval and attending virtually the preliminary approval hearing and working with the Settlement Administrator to ensure the proper administration of the notice and claims processes. Paronich Decl. ¶ 25; Kaufman Decl. ¶ 17.

### ii.  **Class Counsel's Rates Are Reasonable**

Class Counsel's hourly rates are $550, and local counsel Dave Maxfield's hourly rate is $450 and his paralegal's rate is $150, and are supported by counsel's experience and background. Paronich Decl. ¶ 16-21; Kaufman Decl. ¶ 13; Kaufman Decl. ¶¶ 2-9; Maxfield Decl. ¶ 4-7. Specifically, Class Counsel have each been litigating consumer class action claims for more than a decade and have particularly broad experience in the litigation of TCPA class actions. Paronich Decl. ¶¶ 16-26; Kaufman Decl. ¶¶ 2-9.  In fact, to date, not including this Settlement, Class Counsel have recovered over $150,000 million through TCPA class action settlements or judgments for the benefit of consumers. *Id.*

Even though they are only applying at rates of $450-$550 respectively, Class Counsel have been awarded attorneys' fees in TCPA class actions based on lodestar cross-checks using these rates and hourly rates up to $800.  *E.g., Bulette v. W. Dental Servs.*, No. 3:19-cv-00612-MMC (N.D. Cal. Jul. 17, 2020) (awarding attorneys' fees of twenty-five percent of a Settlement Fund plus expenses, and reviewing reasonableness based on a lodestar cross-check of Mr. Kaufman's hourly rate of $800); *Mey v. Frontier Communications Corporation,* No. 3:13-cv-1191-MPS (D. Ct. June 9, 2017) (awarding attorneys' fees equal to one-third of the fund and approving Mr. Paronich's requested hourly rate); *Heidarpour v. Central Payment Co.*, No. 16-cv-01215 (M.D. Ga. May 4, 2017) (same); *Mey v. Interstate National Dealer Services, Inc.*, No. 14-01846 (N.D. Ga June 8, 2016) (same).

Courts within this District have previously approved as reasonable similar hourly rates in comparable cases involving class counsel with analogous experience and participation in those cases as Class Counsel here. *See, e.g.*, *McCurley v. Flowers Foods, Inc.*, Civil Action No. 5:16-cv-00194-JMC, 2018 U.S. Dist. LEXIS 228496, at *19 (D.S.C. Sep. 10, 2018) (awarding

class counsel attorneys' fees supported by lodestar cross check using hourly rates of up to $850); *In re MI Windows & Doors Prods. Liab. Litig.*, No. MDL No. 2333, 2015 U.S. Dist. LEXIS 95889, at *10 (D.S.C. July 23, 2015) (awarding attorneys' fees based on a $600 hourly rate for partners, and noting that counsel calculated lodestar "using hourly rates performing comparable work in South Carolina, even though the case is national in scope and many of the attorneys work in regions with higher rates"); *Phillips v. Triad Guar., Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *23 (M.D.N.C. May 9, 2016) (approving fees where partners' rates ranged from $640 to $880 and liaison counsel's rate was $480).

Given the experience and competence of Class Counsel, as evidenced by the substantial work done to litigate this case and the exceptional result for the Settlement Class, the geographic location of this action, and the significant risks involved, Class Counsel's hourly rates are justified and appropriate.

### e.   **Class Counsel's Request for Expenses Is Reasonable**

Rule 23(h) also permits the Court to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Generally, courts permit recovery of costs advanced for litigation expenses, including document production, consulting with experts, and court and mediation costs." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *49 (D.S.C. June 21, 2019) (granting full reimbursement of expenses where "Class Counsel's expenses were incidental and necessary to the representation of Plaintiff and the Class and are in line with costs charged to individual clients who pay out of pocket.") The Settlement also permits Class Counsel to seek reimbursement of their reasonable expenses.

Class Counsel have incurred expenses in the prosecution of this action totaling $20,275.38 for filing fees, *pro hac vice* fees, service of process fees, expert fees, and mediation fees. Paronich Decl. ¶ 28. These expenses were reasonable and necessary for the prosecution of this action and are the types of expenses that would typically be billed to clients in non-contingency matters, and therefore should be approved. *Id*.

## V.     <u>CONCLUSION</u>

The Settlement securing over $10 million of value for the Settlement Class, including making over $5 million available to the Class and providing meaningful injunctive relief represents an excellent result for the Settlement Class given the risks and obstacles in this Action. Class Counsel's request for a Service Award for the Class Representative and attorneys' fees and expenses is reasonable under all the circumstances. Accordingly, Class Counsel respectfully request that this Court (1) approve the requested Service Award for the Class Representative; and (2) award Class Counsel the requested attorneys' fees and expenses.

Respectfully submitted,

DATED: October 30, 2020          DAVE MAXFIELD, ATTORNEY, LLC

By:      /s/ Dave Maxfield
         David A. Maxfield, Fed. ID 6293
         P.O. Box 11865
         Columbia, SC 29211
         803-509-6800
         855-299-1656 (fax)
         dave@consumerlawsc.com

         Anthony Paronich
         Email:  anthony@paronichlaw.com
         PARONICH LAW, P.C.
         350 Lincoln Street, Suite 2400
         Hingham, MA 02043
         Telephone:  (617) 485-0018
         Facsimile:  (508) 318-8100

         Avi R. Kaufman
         kaufman@kaufmanpa.com
         KAUFMAN P.A.
         400 NW 26th Street
         Miami, Florida 33127
         Telephone: (305) 469-5881

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                    /s/ Dave Maxfield
                    David A. Maxfield, Fed. ID 6293