UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>Vs.<br><br>INDEPENDENT HOME PRODUCTS, LLC,<br><br>Defendant. | Case No. 2:19-cv-02993-SAL |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

Plaintiff Mark Fitzhenry ("Plaintiff") and Defendant Independent Home Products, LLC ("IHP") reached a Class Action Settlement Agreement in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 (the "Agreement" or "Settlement"). The Agreement[1], which this Court preliminarily approved on October 1, 2020[2], provides exceptional relief to the Settlement Class. The Agreement requires IHP to make available $5,166,666.67 and the actual costs of settlement notice and administration for the benefit of Plaintiff and proposed class members, and provides meaningful injunctive relief, which itself is valued at $5,167,649.00. *See* Economic Assessment of Permanent Injunctive Relief in Class Action Settlement Agreement, prepared by J. Herbert Burkman, Ph.D., ECF No. 34-1 ("Burkman Report").

---

[1] *See* ECF No. 29-1.  Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

[2] *See* ECF No. 33.

1

The Settlement Agreement is now subject to final approval by this Court. The parties have fulfilled all their obligations under the preliminary approval order, and notice has been issued. To date, 3,168 claims have been submitted. All class members who submit valid claims forms will receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call. In contrast, *no objections* have been filed by any Settlement Class Member or any government entity that was provided notice of the settlement required by the Class Action Fairness Act.

The settlement is, in all respects, fair, adequate, and reasonable, and the per-claimant awards compare favorably with TCPA and state telemarketing law settlements approved across the country. Accordingly, Plaintiff requests that the Court grant final approval of the Settlement Agreement, find that the class notice program satisfies due process and Rule 23, find the Settlement Agreement to be fair, reasonable, and adequate to the Class; dismiss the claims against Defendant with prejudice, retaining jurisdiction of matters only relating to enforcement of the Settlement Agreement.

## II.     BACKGROUND

Because the procedural history is described in detail in the Plaintiff's Motion for Preliminary Approval, ECF No. 29, and in the fee application, ECF No. 34, it is only summarized briefly for the Court here.

On October 22, 2019, Plaintiff initiated this litigation against IHP in the United States District Court for the District of South Carolina, alleging violations of the TCPA and SCTPPA. *See* ECF No. 1. On December 23, 2019, IHP filed a motion to dismiss and to strike class allegations (ECF No. 8), and Plaintiff responded on December 27, 2019 (ECF No. 10). IHP replied on January 3, 2020 (ECF No. 11). IHP then filed a motion to stay the action pending FCC

2

guidance on the definition of an automatic telephone dialing system under the TCPA on February 3, 2020 (ECF No. 13), to which Plaintiff responded on February 10, 2020 (ECF No. 14).  IHP replied on February 18, 2020. (ECF No. 15).

The parties also engaged in discovery, which included production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue, and IHP financial documents, and the deposition of IHP's corporate representative. *See* Exhibit 1, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 5.

On August 13, 2020, the parties engaged in a full-day mediation session with the assistance of Hon. James Holderman (Ret.) of JAMS, and after a full-day of negotiations, a settlement was reached and documented in a signed settlement term sheet.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. Paronich Decl. ¶ 7. Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, particularly as a result of the Covid-19 pandemic and supported by the financial documents provided by IHP to Plaintiff, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and particularly the risk that a change in the law, including a ruling by the Supreme Court or this Court concerning the constitutionality of the TCPA, an interpretation from the Supreme Court or Federal Communications Commission regarding what constitutes an autodialer under the TCPA, or a ruling by this Court concerning the constitutionality of the SCTPPA, could nullify Plaintiff's claims. *Id.*; *see Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631; *Facebook, Inc. v. Duguid*, No. 19-

3

511; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020); *United Resource Systems, Inc. v. The State of South Carolina, by and through Alan Wilson, in his official capacity as Attorney General of South Carolina*, Case No. 3:21-cv-00364-JFA (D.S.C.) (seeking declaratory and injunctive relief and arguing that the Anti-Spoofing Provision is in conflict with, and therefore preempted by, the federal Truth in Caller ID Act of 2009, Public Law 111-331, 47 U.S.C. § 227(e), and that the Anti-Spoofing Provision is unconstitutional).

Based on their evaluation of all these factors, Plaintiff and Plaintiff's counsel determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendant's defenses, the uncertainties of contested litigation, Defendant's financial condition, and the everchanging legal landscape. *See* Paronich Decl. at ¶ 7.

### III. THE PROPOSED SETTLEMENT

**A.     The Settlement Class**

The proposed Settlement Class includes:

> All users and subscribers of the cellular telephone numbers and South Carolina area code telephone numbers identified in the Call Log as receiving an IHP Call from IHP's dialing system from October 22, 2015 through August 14, 2020.

The following persons and entities are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) IHP, as well as any parent, subsidiary, affiliate or control person of IHP, and the officers, directors, agents, servants or employees of IHP; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any member of the Settlement Class

who has timely opted out of the Settlement; and (6) Class Counsel and their employees. Agreement at § III.

**B.     Settlement Relief**

The Settlement provides meaningful monetary and permanent injunctive relief. Pursuant to the Agreement, IHP agrees to (1) make available the Settlement Fund, which is the total of $5,166,666.67 and (2) pay the actual costs of settlement notice and administration. The Settlement Fund shall be used to pay all Approved Claim Payments, an award of attorneys' fees and costs, and an incentive award, if any. Agreement at § IV. IHP also agrees to submit to a permanent injunction designed to prevent against the making of TCPA and SCTPPA violative calls that includes the following terms: (1) IHP will not make unsolicited telemarketing calls using Spitfire to telephone numbers that IHP determines to be cellular telephone numbers; (2) so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers; and (3) IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers. *Id*.

**C.     Service Award and Class Counsel Fees and Expenses**

Pursuant to the Agreement, Class Counsel have asked the Court to approve a service award to the Class Representative in an amount not to exceed $10,000. Class Counsel have also requested that the Court approve an award of attorneys' fees and reimbursement of documented costs and expenses in an amount not to exceed $1,289,166.67.

**D.     Notice Program**

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

5

P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Settlement provided for mailed notice and long-form notice. The settlement administrator has completed all notice obligations. Affidavit of Cameron R. Azari, Esq., Senior Vice President of Epiq Class Action & Claims Solutions, Inc., ("Azari Decl.") attached as Exhibit 2. The Postcard Notice was delivered to 46,105 of the 46,679 Settlement Class Members for whom mailing address data was available - a deliverable rate of 98.7% for identifiable Settlement Class Members. Overall, individual notice reached approximately 98.4% of the 46,830 Settlement Class Members. *Id.* at ¶ 21. Such a percentage far exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%. ); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").

The Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23. Azari Decl. at ¶ 31.

**E.      Claims**

Each Settlement Class Member who timely files with the Settlement Administrator a Claim Form that is determined by the Settlement Administrator to be an Approved Claim pursuant to the provisions of the Agreement shall receive a cash payment of approximately $81

6

for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call.

Epiq has received 3,168 Claim Forms (438 online and 2,730 paper), which is a claims rate of approximately 6.7%. This claims rate is consistent with claims rates in other TCPA class action settlements. Paronich Decl. at ¶ 10; *see e.g. Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

Notwithstanding, since the postmark deadline for filing a claim was January 27, 2021, it is likely Epiq will continue to receive and process timely and late claim forms received after the January 27, 2021, deadline (it is common to receive timely postmarked claims upwards of 10 business days after a claims filing deadline, especially this year with the USPS mail handling and delivery delays). As a result, the claim statistics are not final and are subject to further updates.[3] Azari Decl. at ¶ 27.

---

[3] The current claims rate (which is anticipated to increase) is consistent with claims rates for similar TCPA settlements, and supports final approval of the Settlement, as discussed above. "The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 151744, at

**F.     Release**

The Release is narrowly tailored under the Agreement to the types of claims that were asserted in the Action, and means all claims, demands, causes of actions, suits, damages, and/or fees arising under the TCPA and/or SCTPPA based on calls identified in the Call Log. Agreement at ¶ 28.

## IV.     THE SETTLEMENT MERITS FINAL APPROVAL

### A.  The Settlement Is Fair, Reasonable And Adequate

The settlement of a class action must be approved by the court. Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 F. App'x. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158. Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992).

Preliminary approval of the Settlement Agreement has already been granted. At this final approval stage, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec.*

---

*48-50 (S.D. Fla. Nov. 9, 2015) ("Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates. . . . In addition, courts often grant final approval of class action settlements before the final claims deadline. . . . The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided. Further, setting the Claim Deadline after the Final Fairness Hearing has the salutary effect of maximizing the claim period's duration.") (internal citations omitted); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims).

*Litig.*, 927 F.2d at 158.

A class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Smith v. Res-Care, Inc.*, CV 3:13-5211, 2015 WL 461529, at *3 (S.D. W. Va. February 3, 2015) (citing Manual for Complex Litigation, § 30.44 (1985)). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Central States Health & Life Co. of Omaha*, C/A No. 3:11-2149-MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015); *Geissler v. Stirling*, No. 4:17-cv-01746-MBS, 2019 U.S. Dist. LEXIS 131110, at *14-15 (D.S.C. Aug. 5, 2019).

In evaluating the fairness of a proposed settlement, the Court should consider these factors: (1) the posture of the case at the time the settlement is proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. "A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations." *Geissler*, 2019 U.S. Dist. LEXIS 131110, at *9 (internal citation omitted).

In determining adequacy, the relevant considerations include: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses

9

plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery of a litigated judgment; and (5) the degree of opposition to the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

All of these factors weigh strongly in favor of final approval.

### 1. *The Posture of the Case and the Discovery Conducted By The Time Of Settlement Support Approval*

"This factor requires the court to determine whether the case was well-enough developed for the parties to appreciate the full landscape of their case." *Kirven,* 2015 U.S. Dist. LEXIS 36393, at *11-12 (internal citation omitted). "District courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 26450, at *23 (D.S.C. Feb. 14, 2019) (internal citations omitted). Here, the parties exceed this standard. Settlement was reached after dispositive motion practice and meaningful discovery had been completed. Paronich Decl. ¶ 5. Plaintiff opposed Defendant's dispositive motion to dismiss and a motion to stay the action filed by Defendant, which was also presumptively dispositive. Paronich Decl. ¶ 5. The efforts to date also include comprehensive discovery involving, among other things, production of call logs, lead lists, technical manuals concerning the dialers used to make the calls at issue and the deposition of IHP's corporate representative. Paronich Decl. ¶ 5. Furthermore, in an effort to conduct a meaningful mediation, IHP financial documents were produced to Class Counsel. Paronich Decl. ¶ 5.

Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for

well-informed settlement negotiations based on a thorough analysis of the issues. *See, e.g., Robinson*, 2019 U.S. Dist. LEXIS 26450, at *23; *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement."). As a result, both the parties and the Court have sufficient information to appraise the significant risks in continued litigation, including but not limited to class certification prospects, and the fairness of settlement terms. *Id.* That knowledge base, coupled with the parties' respective assessments of the relative strengths and weaknesses of their legal positions, all weigh in favor of granting final approval, because they ensure that the parties and the Court are able to fairly evaluate the case.

### 2. The Negotiation Process Was At All Times Arm's Length And Was Overseen By An Experienced Mediator

"Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven*, 2015 WL 1314086, at *5; *Geissler,* 2019 U.S. Dist. LEXIS 131110, at *14-15. Here, the circumstances surrounding the negotiation of the settlement demonstrate, even without a presumption, that the negotiations were wholly in good faith and without any suggestion of collusion. The parties reached agreement only after mediating for a full day with the assistance of Hon. James Holderman (Ret.), a JAMS mediator with TCPA experience. Paronich Decl. ¶ 6; *see* Judge Holderman's declaration (ECF No. 29-3). At all times the negotiations were at arm's length and free from collusion. Paronich Decl. ¶ 6. Plaintiff's attorneys steadfastly advocated for substantial settlement relief, but at the same time were pragmatic about IHP's ability to pay a large judgment. *Id.* Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risk that they would lose the motion to stay causing a

11

significant delay and/or face a potential change in law impacting Plaintiff's TCPA and/or SCTPPA claims. *Id.* Plaintiff relied on the judgment of their counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. *Id.* In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement given counsel's "abundance of experience").

### 3. *Class Counsel Are Experienced TCPA litigators*

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *13.

Here, the settlement agreement is the result of extensive negotiations between seasoned defense counsel and experienced class action attorneys who are skilled and experienced in litigating and resolving class actions in general, and in TCPA class actions in particular, and are extremely familiar with all of the factual and legal issues of this case. Specifically, Class Counsel have each been litigating consumer class action claims for more than a decade and have particularly broad experience in the litigation of TCPA class actions. Paronich Decl. ¶ 9.  In fact, to date, not including this Settlement, Class Counsel have recovered over $150,000 million through TCPA class action settlements or judgments for the benefit of consumers. *Id.* Given the breadth of their experience, see generally ECF No. 34 and Class Counsel declarations attached thereto, their opinion should weigh strongly in favor of approval of the Settlement.

### *4. The Relative Strength Of The Plaintiff's Case On The Merits And The Existence Of Any Difficulties Of Proof Or Strong Defenses The Plaintiff Is Likely To Encounter If The Case Goes To Trial*

While Plaintiff and the Class believe they would prevail on class certification and at trial, Defendant strongly argued otherwise. The risk of no recovery here—and in complex cases of this type more generally—is real.

While this case was pending, the Supreme Court assessed the constitutionality of the TCPA in *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). At issue in that case was a 2015 congressional amendment to the TCPA's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by the federal government. In *Barr*, the Supreme Court struck that down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Id.* However, defendants in TCPA cases have proffered the argument that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law and that as a result any alleged TCPA violations during that time are not enforceable in federal court. Indeed, various federal district courts have adopted this interpretation. *See e.g., Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020). As such, the Settlement Class members risked recovering *nothing* if this Court or the Fourth Circuit sided with the Court in *Creasy*.

Another substantial risk in this case focuses on the question of whether the dialing system used by Defendant is an "Automatic Telephone Dialing System" under the TCPA. This question is set to be answered by the Supreme Court, which is evaluating the Ninth Circuit's holding in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), during the 2021 term. The dialing

13

system allegedly used by Defendant is less likely to be found to be an ATDS in the 3rd, 7th and 11th Circuit due to recent developments in those Circuits. Specifically, those decisions are *Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir. 2020), *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there was a likelihood that, given the split in authority, the Supreme Court review could result in a less favorable ATDS interpretation. Notably, Justice Amy Coney Barrett wrote the decision for the Seventh Circuit in *Gadelhak.*

If the Supreme Court were to agree with the Third, Seventh or Eleventh Circuit Court of Appeals, no one, including the Plaintiff, would have been able to recover *anything at all* for any calls made to their cellular telephones with a dialing system that they contend to be an ATDS. Other courts have adopted the same position. *See e.g. Marshall v. CBE Group, Inc.*, Case No. 2:16-cv-02046-GMN, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018); *Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Keyes v. Ocwen Loan Servicing*, No. 17-cv-11492, 2018 U.S. Dist. LEXIS 138445, at *15 (E.D. Mich. Aug. 16, 2018).

Another court in this District is also currently examining the constitutionality of the SCTPPA. *United Resource Systems, Inc. v. The State of South Carolina, by and through Alan Wilson, in his official capacity as Attorney General of South Carolina*, Case No. 3:21-cv-00364-JFA (D.S.C.). The risks attendant to this action are two-fold. First, if the court finds that the SCTPPA is invalid, the SCTPPA claims of Plaintiff and those similarly situated will be

extinguished. Second, even if it does not so find, there is a risk of this case being stayed and delayed pending a determination of the SCTPPA's validity.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized), and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

"In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is one hundred percent assured and that all claimed damages are properly recoverable. *See In re Compact Disc Litig.,* 216 F.R.D. at 211 (the role of the court is not to "second-guess" the settlement but to decide whether its overall terms are reasonable). As one court has observed, "[a] settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 258 (D. Del. 2002) (citation omitted)." *Muhammad v. Nat'l City Mortg., Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008). The risks of the litigation, including the changing TCPA and SCTPPA landscape, and the complexity of the issues involved, weigh in favor of granting final approval to the Settlement.

### 5. *The Anticipated Duration And Expense Of Additional Litigation*

The complexity, expense, and duration of litigation are factors that support approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as one of nine factors in determining the fairness of settlement). Here, major hurdles remain in this litigation, including class certification and summary judgment. Plaintiff and Plaintiff's counsel also were well aware of the risk that they would lose the motion to stay causing a significant delay and face a potential change in law impacting both of Plaintiff's claims, as discussed above. Paronich Decl. ¶¶ 6-8. The parties elected to forgo the expense of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the significant risks of further litigation into account, once they were able to obtain sufficient information regarding the class and the class size.

### 6. *The Solvency Of The Defendant And Likelihood Of Recovery On A Litigated Judgment*

The potential damages could bankrupt IHP. Unlike a large public company with extensive financial resources, IHP is a small, privately-held company. As one court acknowledged in approving a TCPA settlement funded by a much larger company than Defendant:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added). The

typical risks of nonpayment are accentuated in the current economic client where the country is facing the lingering COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion and particularly businesses that rely on entering consumers' homes. The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.

### 7. *Other Factors: The Settlement Amount Is Significant And The Lack Of Objections Indicates The Class's Support*

As described in Plaintiff's application for attorneys' fees and service award, the Settlement provides benefits to the Settlement Class valued at over $10 million, including requiring IHP to make monetary relief of over $5.166 million available for the Class and providing meaningful injunctive relief valued at over $5 million.

Each claimant will receive a cash payment of approximately $81 for each potentially SCTPPA violative call and approximately $41 for each potentially TCPA violative call, which far exceeds the typical value of rewards in such settlements, often from much larger companies. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result").

Pursuant to the settlement, IHP also agrees to submit to a permanent injunction designed to prevent against the potential future violation of the TCPA or SCTPPA. First, IHP will not make unsolicited telemarketing calls using Spitfire[4] to telephone numbers that IHP determines to be cellular telephone numbers. Second, so long as IHP does not maintain a physical presence in South Carolina, IHP will not display a telephone number with a South Carolina area code as its caller ID when calling South Carolina area code telephone numbers. Finally, IHP will identify its phone number and physical address during any telemarketing calls to South Carolina area code telephone numbers.

The reaction of the class members to the settlement supports final approval as well. "An absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *14. The reaction of the class to the settlement has been overwhelmingly positive, with no objections and only two exclusions. Azari Decl. ¶ 26.

## B. The Settlement Class Should Be Certified

In granting preliminary approval, the Court provisionally certified the Settlement Class for settlement purposes. For all the same reasons contained in Plaintiff's preliminary approval memorandum (ECF No. 29), the Settlement Class meets the requirements of Rule 23, and should be certified for settlement purposes.

## V.     CONCLUSION

The Settlement securing over $10 million of value for the Settlement Class, including making over $5 million available to the Class and providing meaningful injunctive relief

---

[4] Spitfire is a third-party dialing service software that also offers the ability to determine if numbers that are going to be called are cellular telephone numbers.

represents an excellent result for the Settlement Class given the risks and obstacles in this Action. For the reasons stated above, Plaintiff respectfully request that the Court grant this Motion and enter the Proposed Final Approval Order and Permanent Injunction, approving the parties' proposed Settlement Agreement in full. The Court has already provisionally certified the Settlement Class, and, for the same reasons, Plaintiff requests that the Court finally certify the Settlement Class.

A proposed Final Approval Order is attached as <u>Exhibit 3</u>.

                                               Respectfully submitted,

DATED: February 12, 2021          DAVE MAXFIELD, ATTORNEY, LLC

                                      By:   */s/ Dave Maxfield*
                                                 David A. Maxfield, Fed. ID 6293
                                                 P.O. Box 11865
                                                 Columbia, SC 29211
                                                 803-509-6800
                                                 855-299-1656 (fax)
                                                 dave@consumerlawsc.com

                                                 Anthony Paronich
                                                 Email:  anthony@paronichlaw.com
                                                 PARONICH LAW, P.C.
                                                 350 Lincoln Street, Suite 2400
                                                 Hingham, MA 02043
                                                 Telephone:  (617) 485-0018
                                                 Facsimile:  (508) 318-8100

                                                 Avi R. Kaufman
                                                 kaufman@kaufmanpa.com
                                                 KAUFMAN P.A.
                                                 400 NW 26th Street
                                                 Miami, Florida 33127
                                                 Telephone: (305) 469-5881

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on February 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                                 */s/ Dave Maxfield*
                                                 David A. Maxfield, Fed. ID 6293